UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMER KOVACEVIC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:15 CV 1748 CDP |
| | ) |
| ELAINE C. DUKE, et al.,[1] | ) |
| | ) |
| Respondents. | ) |

**<u>MEMORANDUM AND ORDER</u>**

Petitioner Amer Kovacevic seeks judicial review of a decision by the Department of Homeland Security's United States Citizenship and Immigration Services (USCIS). The USCIS denied Kovacevic's naturalization application on the grounds that he failed to demonstrate that he was a person of good moral character. More than a year after Kovacevic filed his petition in this case, the Department of Homeland Security issued a Notice to Appear, effectively initiating proceedings to remove Kovacevic from the United States. Respondents now move to dismiss Kovacevic's petition before this court, arguing that because a removal proceeding is pending against Kovacevic, the court is divested of its jurisdiction pursuant to 8 U.S.C. § 1429. Respondents further argue that even if jurisdiction

---

[1] On July 31, 2017, Elaine C. Duke became Acting Secretary of the U.S. Department of Homeland Security and on March 31, 2017, James McCament became Acting Director of U.S. Citizenship and Immigration Services, and so they are substituted as respondents for Jeh Johnson and Leon Rodriguez, respectively.

exists, Kovacevic fails to state a claim for relief and I should grant respondents' motion for judgment on the pleadings. Kovacevic contends that § 1429 does not deprive this Court of jurisdiction and argues the Court may provide him with effective relief by rendering a declaratory judgment that he is entitled to obtain citizenship.

I conclude that § 1429 does not divest this court of jurisdiction to conduct a de novo review of the USCIS's denial of Kovacevic's petition for naturalization. However, because of the pending removal proceedings, § 1429 prevents me from instructing the Attorney General to naturalize Kovacevic – the relief requested in his petition. A declaratory judgment at this time would not constitute effective or appropriate relief because the grounds for Kovacevic's removal are distinct from the grounds upon which he was denied naturalization. I therefore decline to exercise my discretion to provide relief at this time. I will not dismiss the case, however, but will stay it until the outcome of Kovacevic's removal proceedings is determined.

## Background

Petitioner Kovacevic arrived in the United States in 1999 as a derivative refugee from Bosnia and was accorded lawful permanent resident status. After living in the United States for almost five years, he was convicted of assault in the third degree for assaulting a teacher at the Missouri School for the Deaf.

Kovacevic was also convicted in 2006 of sexual misconduct and in 2012 of domestic assault.

In 2014, Kovacevic applied to become a United States citizen. The USCIS denied his application, concluding that he failed to show the requisite good moral character because of these convictions. Kovacevic filed a Request for Hearing to challenge the denial of his application and submitted additional evidence to attempt to establish his good moral character. On review, USCIS affirmed the denial and found that even considering the additional evidence, Kovacevic did not possess the required good moral character.

Kovacevic filed this lawsuit on November 24, 2015, pursuant to 8 U.S.C. § 1421(c), seeking the Court's de novo review of the denial of his naturalization application. On April 14, 2017, the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") initiated removal proceedings against him by filing a Notice to Appear with the Immigration Court, charging him as removable for committing a crime involving moral turpitude within five years of admission. Respondents now move to dismiss Kovacevic's petition for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim. Specifically, respondents argue that once removal proceedings were initiated, this Court was divested of subject-matter jurisdiction pursuant to § 1429. Respondents

also argue the Court can no longer grant Kovacevic effective relief as removal proceedings are pending.

### Sections 1421(c) and 1429

The Attorney General is granted the sole authority to naturalize persons as citizens of the United States. 8 U.S.C. § 1421(a). Congress empowered the district courts to review the Attorney General's naturalization decisions in § 1421(c), which provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). Any relief by a court under section 1421(c) is an instruction to the Attorney General (now the Secretary of Homeland Security)[2] to naturalize the petitioner. *Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004). Once removal proceedings have been initiated against an alien, however, the Attorney

---

[2] The statutory reference to the Attorney General is a legal artifact. *Awe v. Napolitano*, 494 Fed.App'x. 860, 863 n.3 (10th Cir. 2012). In 2002, congress transferred authority (1) to commence removal proceedings and (2) to adjudicate applications for naturalization from the Attorney General to the Secretary of the Department of Homeland Security. *Id. See* 6 U.S.C. § 557 (Homeland Security Act mandates that references to the Attorney General are deemed to include DHS where relevant agency functions have been transferred from the Department of Justice to DHS). For ease in discussing the statutes, I will refer to the Attorney General as that is the actual language of the statutes.

General's power to naturalize or consider the application for naturalization is limited by 8 U.S.C. § 1429, which provides as follows:

> [N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act ....

8 U.S.C. § 1429.

## Discussion

In support of their Motion to Dismiss, respondents aver that § 1429 divests the district court of jurisdiction under § 1421(c) to hear Kovacevic's petition. In opposition, Kovacevic argues that the plain language of § 1429 strips the *Attorney General* of the power to naturalize a citizen during removal proceedings, but has no effect on the jurisdiction of the district court to conduct a de novo review of the denial of his application by the USCIS. Sections 1421(c) and 1429 make no reference to one another, and neither explains how the two sections are to be read together.

Although the Eighth Circuit has not been presented with this issue, the bulk of the appellate courts who have examined this issue have found that district courts retain jurisdiction, despite the seemingly contrary language of § 1429. In *De Lara Bellajaro v. Schiltgen,* the Ninth Circuit held:

> Section 1421(c) plainly confers jurisdiction to review the denial of an application for naturalization on district courts. Nothing in the text limits the jurisdiction so conferred to review of denials when there is no removal proceeding pending. By the same token, the text of § 1429 - which does constrain consideration of naturalization applications during the pendency of a removal proceeding - clearly applies to the Attorney General. There is no hint in the language of § 1429 that it also applies to the courts. Thus, we see no textual basis for concluding that jurisdiction vested in district courts by § 1421(c) is divested by § 1429.

378 F.3d 1042, 1046 (9th Cir. 2004), *as amended* (Sept. 1, 2004); *see also Zayed*, 368 F.3d at 906; *Gonzalez v. Secretary of Dept. of Homeland Sec.*, 678 F.3d 254, 258 (3rd Cir. 2012*)*; *Klene v. Napolitano*, 697 F.3d 666, 668 (7th Cir. 2012); *Farghaly v. Frazier*, 404 F. Supp. 2d 1125, 1126–27 (D. Minn. 2005). Moreover, the Third Circuit in *Gonzalez v. Secretary of Dept.of Homeland Sec.*, reasoned as follows:

> Rather than vest full and final authority to grant or deny a naturalization application with the Attorney General, Congress gave the district courts the power of *de novo* review. To hold that district courts are precluded from review by § 1429 whenever removal proceedings are pending raises the possibility that review may be cut off by the actions of the Attorney General. Such a possibility is contrary to the intent of Congress as expressed in the structure of the statute.

678 F.3d at 260–61 (internal citations and footnotes omitted).

I agree with these courts that nothing in the language of the federal statutes divests a district court of jurisdiction to review a denial of naturalization while removal proceedings are pending. Resolving this threshold question of jurisdiction, however, is not the end of the matter. The more difficult issue

6

remains what, if any, relief may be granted under the judicial review provision of § 1421(c), given the limits imposed on the Attorney General by § 1429. Respondents argue Kovacevic is barred from conclusive relief because I cannot instruct the Attorney General to naturalize him.

The majority of appellate courts have found § 1429 limits the availability of remedies under the judicial review provisions of § 1421(c). *See Bellajaro,* 378 F.3d at 1043–44; *Zayed,* 368 F.3d at 906*; Ajlani v. Chertoff*, 545 F.3d 229, 238-39 (2d Cir. 2008); *Gonzalez*, 678 F.3d at 259; *Klene*, 697 F.3d at 669. In particular, the courts conclude that § 1429 prevents the district court from ordering the Attorney General to naturalize an alien while removal proceedings are pending. *See Bellajaro*, 378 F.3d at 1046; *Zayed*, 368 F.3d at 906; *Ajlani*, 545 F.3d at 238-39; *Gonzalez*, 678 F.3d at 259; *Klene*, 697 F.3d at 668. Likewise, the parties here agree that I cannot direct the Attorney General to naturalize Kovacevic during the pendency of his removal proceedings. The parties dispute, however, whether the unavailability of this remedy bars the Court from acting at all.

Thus, the next question I must consider is whether effective relief can be afforded to Kovacevic. Respondents contend the answer to this question is no – Kovacevic is barred from relief and the Court is deprived of the authority to adjudicate. In contrast, Kovacevic argues I may grant him effective relief in the form of a declaratory judgment – a determination that, unless the removal

7

proceedings are decided against him, he is entitled to naturalization. Kovacevic asks the Court to permit him to amend his petition to request this declaratory relief.

Only a few appellate courts have addressed the possibility of declaratory relief. The Third Circuit in *Gonzales* and the Seventh Circuit in *Klene v. Napolitano* have held that a district court reviewing a petitioner's denial of naturalization may provide effective relief by issuing a declaratory judgment of entitlement to citizenship.[3] I find *Klene* instructive.

In *Klene*, similar to the situation here, the petitioner sought judicial review in district court after the USCIS issued a final decision denying his application for naturalization. 697 F.3d at 667. While his petition was pending in district court, the DHS issued a Notice to Appear, and pursuant to the agency's motion, the district court dismissed the case. *Id.* On appeal, the Seventh Circuit first determined that the district court had subject-matter jurisdiction to hear the case. *Id.* at 668. Then, the court concluded that although § 1429 precluded the district court from ordering the Attorney General to naturalize Klene once removal proceedings began, it could nevertheless grant effective relief in the form of a declaratory judgment. *Id.* at 669. The court explained that a declaratory judgment in the petitioner's favor could provide relief to the petitioner because such a judgment could be asserted in the removal proceedings and bring the proceedings

---

[3] The Sixth Circuit raised the possibility of declaratory relief in *Zayed v. United States,* 368 F.3d 902 (6th Cir. 2004), but did not endorse it as the alien did not request a declaratory judgment.

8

to a prompt close. *Id.* The Seventh Circuit cautioned, however, that that entering equitable relief – such as a declaratory judgment – during overlapping proceedings "present[s] a question on which the [district court] judge should exercise sound discretion." *Id.* The Seventh Circuit then remanded the case, instructing the district court to determine whether it was appropriate to resolve the case through a declaratory judgment. *Id.* at 670.

Kovacevic urges me to follow the rationale of *Klene* and provide him relief in the form of a declaratory judgment entitling him to naturalization. "In the case of an actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201. A declaratory judgment must "affect[] the behavior of the defendant towards the plaintiff." *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis removed). In assessing whether declaratory relief here will affect defendants' behavior toward Kovacevic, I must consider whether a declaration that Kovacevic is entitled to naturalization in this proceeding will provide him relief in the removal proceeding.

In *Klene*, the Seventh Circuit suggested a declaratory judgment in the alien's favor could affect the outcome of the removal proceedings. 697 F.3d at 669. In a case applying *Klene*, *Peprah v. U.S. Citizenship & Immigration Services.*, the district court found declaratory judgment appropriate because the grounds for

removal of the alien were the same grounds upon which he was denied naturalization. No. 12 CV 02564, 2012 WL 5306849, at *4 (N.D. Ill. Oct. 26, 2012). Therefore, the *Peprah* court reasoned, a declaratory judgment reversing the decision of the DHS could similarly close the removal proceeding and permit the Attorney General to naturalize the alien. *Id.* This is not the case here. Kovacevic was denied naturalization on the grounds that he did not establish good moral character. Kovacevic's removal proceeding, in contrast, turns on a different determination. The Notice to Appear charged Kovacevic as removable for committing a crime involving moral turpitude within five years of his admission to the United States. Thus, the outcome of the removal proceeding depends on whether Kovacevic's 2004 conviction for assault constitutes a crime of moral turpitude. That is a different question from whether he possesses good moral character. Kovacevic acknowledges that the grounds for his naturalization and the grounds for his removal are distinct from one another. In Kovacevic's response to defendants' motion to dismiss, he concedes that "[m]oral turpitude … was not even mentioned in the government's denial of [his] application." (ECF No. 42 at 3). He also agrees that the Court is "not to decide whether his conviction constitutes a crime of moral turpitude" and that a declaratory judgment rendered here would have no impact on his removal. *Id.* He states the declaration "would not play any

part in the deportation proceedings but would only stand there to become operational should Petitioner win in those proceedings." *Id.* at 8.

I do not find declaratory relief appropriate under the circumstances here. Any declaration regarding Kovacevic's entitlement to citizenship would not affect the outcome of his removal proceedings – and consequently, it would not affect the behavior of the USCIS towards Kovacevic. More importantly, the declaratory judgment would be conditional and would have no effect on the parties' dispute unless Kovacevic prevails in the removal proceedings. A declaratory judgment that is only effective if petitioner prevails in another proceeding comes precariously close to being an impermissible advisory opinion.

This conclusion does not mandate dismissal, however. Kovacevic asks, in the alternative, that I retain jurisdiction over his action and stay the case until the outcome of his removal proceedings is determined. I find such relief appropriate under the circumstances here. Because this case progressed for seventeen months before the Notice to Appear was filed, staying the action serves the interests of judicial economy. If Kovacevic prevails in his challenge to removal, this case could be set for a prompt trial.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [#39] is **DENIED**.

**IT IS FURTHER ORDERED** that the above-captioned case is removed from the September 5, 2017 trial docket and is **STAYED** until further order of the Court.

**IT IS FURTHER ORDERED** that the parties shall provide a report to the Court every sixty days describing the status of the removal proceedings and, if possible, estimating when those proceedings are expected to conclude.

**IT IS FURTHER ORDERED** that for administrative ease, the Clerk of Court shall administratively close this case, subject to reopening on motion by either party.

**IT IS FURTHER ORDERED** that within 14 days of the conclusion of the removal proceedings, the parties shall inform the Court of the outcome and shall propose a schedule for any steps necessary to finally resolve this case.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of August, 2017.